UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6273-CR-HUCK

FILED CLARENCE MADDOX CLERK U.S. DIST. CT. S.D. OF FLA. DEC 15

THE UNITED STATES OF AMERICA

Plaintiff,

v.

CARLOS GARCIA,

Defendant.

______________________________/

**CARLOS GARCIA'S MOTION FOR EARLY**
**TERMINATION OF SUPERVISED RELEASE**

COMES NOW, undersigned counsel for Defendant, CARLOS GARCIA, and files this, his Motion for Early Termination of Supervised Release and would state as follows:

1. On February 26, 2002, this Honorable Court sentenced Carlos Garcia to a term of imprisonment of 25 months to be followed by a term of supervised release of 3 years.

2. On March 9, 2005, Defendant Garcia admitted to violating conditions of his supervision by testing positive for the presence of cocaine.

3. As this Court may recall, Defendant has had issues with regard to his relationship with the mother of his two children which had resulted in the State of Florida initiating dependency proceedings in the Circuit Court of Miami-Dade County. The proceedings commenced in January of this year just prior to the Defendant's violation hearing.

4. The Defendant has been in complete compliance with a family Plan in connection with the dependency proceeding and as part of the aforementioned Plan, Defendant Garcia has completed parenting courses and has remained totally drug-free since the violation in this case. To



ensure compliance with the Plan, the Circuit Court Judge has ordered Defendant Garcia to submit to drug testing three times per week, which Defendant Garcia has done so since approximately September of this year. Furthermore, Defendant Garcia has attended counseling with Dr. Michael Rappaport. Attached hereto is a letter from Dr. Rappaport which outlines the Defendant's progress in treatment since testing positive in late January, 2005. Mr. Garcia has remained completely drug free, has been gainfully employed, has been a model supervised releasee and exemplary parent.

5. Mr. Garcia has maintained gainful employment, has complied with all aspects concerning the conditions of his supervised release, as well as the Plan with regard to his children. Furthermore, on December 2, 2005, after conducting an extensive home study as well as observing Defendant Garcia interact with his children over the course of 11 months, the Department of Children and Family Services recommended to the Court that the children be reunified with Defendant Carlos Garcia. Mr. Garcia has had extensive visitation with his children, who have been living with his brother, Manuel Garcia, and his wife. The Defendant's son Charles, age 8, has expressed a desire to live with his father. The Defendant's other child, Brianna, who is 18 months, obviously cannot express feelings with regard to that issue.

6. On March 9, 2005, when the Defendant admitted to the instant violation, this Honorable Court found Defendant Garcia to be in violation and revoked his supervised release and ordered a new term of supervised release until July 1, 2006. At the hearing, the Court indicated that it would consider early terminating Mr. Garcia based upon his progress with regard to his domestic case issues. Attached hereto is the transcript of the hearing held before this Honorable Court on March 9, 2005.

7. The undersigned has conferred with Kelly Cutright, United States Probation Officer, who indicates to the undersigned that the Defendant has been in total compliance since supervised release was reimposed, however, per Department of Probation policy cannot recommend that his supervised release be terminated.

8. Finally, the undersigned conferred with Jeffrey Sloman, Assistant United States Attorney, who takes no position with respect to this Motion.

WHEREFORE, Carlos Garcia would ask that this Court grant the foregoing Motion.

I CERTIFY that a true and correct copy of the foregoing was furnished to Jeffrey Sloman, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33128; and Kelly Cutright, U.S. Probation Officer, One Biscayne Tower, 2 South Biscayne Blvd., Miami, Florida 33131 by U.S. Mail on December 14th, 2005.

ALBERT Z. LEVIN, P.A.
261 N.E. First Street
Sixth Floor
Miami, Florida 33132
(305) 379-7101 Telephone
(305) 372-0052 Facsimile
Florida Bar No. 316581

By ______________________
ALBERT Z. LEVIN

**BEHAVIOR CHANGERS, INC.**
1001 BRICKELL BAY DRIVE, SUITE 2204
MIAMI, FLORIDA 33131
Phone: (305) 373-7106
Fax: (305) 373-7108

**MERRY S. HABER, Ph.D.**
**MICHAEL E. RAPPAPORT, Ph.D.**
**RALPH D. RICHARDSON, Ph.D.**
*Licensed Psychologists*

November 15, 2005

Demsey Webb, Case Manager
Children and Family Services
Fax: 786-285-4722

Dear Ms. Webb:

I am a clinical and forensic psychologist and have been treating Carlos Garcia since June 28, 2005. I have been treating people with addictions and psychological problems for more than 20 years and I am impressed by Mr. Garcia's lack of defensiveness and his willingness to take responsibility for his behavior. He has been compliant and cooperative throughout the treatment and I will continue to see him on a regular basis. He also attends meetings and is being regularly drug tested through the court system. His prognosis for change at this time is very good.

If I can be of any further assistance, please do not hesitate to call.

Sincerely,

-----------------------------------------

Michael E. Rappaport, Ph.D.
Licensed Psychologist
Fla. License #3542

2005\letters\mr\garcia-c.doc

11/15/2005 16:15 3053737108 BEHAVIOR CHANGERS PAGE 01/01

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6273-CR-PCH

THE UNITED STATES OF AMERICA,

Plaintiff

vs.

CARLOS GARCIA,

Defendant

\- - -

REVOCATION HEARING HELD 3-9-05

BEFORE THE HONORABLE PAUL C. HUCK

\- - -

APPEARANCES:

FOR THE GOVERNMENT:

ERIC MORALES, A.U.S.A

FOR THE DEFENDANT:

ALBERT LEVIN, ESQ.

REPORTED BY:

PATRICIA SANDERS, RPR

OFFICIAL COURT REPORTER

THE COURT: We're here in United States of America versus Carlos Garcia. Case No. 00-6273. Counsel, may I have appearances, please.

MR. MORALES: Eric Morales for the Government.

MR. LEVIN: Albert Levin on behalf of Carlos Garcia.

THE COURT: Please be seated. Where are we on this matter?

MR. LEVIN: We have been negotiating a potential disposition of the issues with respect to Mr. Garcia. If the Court would be willing to accept the following proposal we would be willing to resolve this matter at this time.

THE COURT: All right.

MR. LEVIN: My client is ready to admit to a violation of his supervised release with the understanding that the disposition would be that this Court would I guess revoke his supervised release and then place him on an additional term of supervised release which would terminate on or about December 31st of this year with the same conditions that had been imposed previously, with the exception of the community service hours which he has already performed. The standard --

THE COURT: I saw that he had completed all of his hours. He's also been steadily employed. That is a good thing as well. But he has this ongoing bad relationship with Bernadette Horvath, and that concerns me, this on going problem.

MR. LEVIN: I can explain it, Your Honor.

THE COURT: All right.

MR. LEVIN: There have been allegations -- and as the Court knows, in these domestic violence situations there arise incidents, some founded, some unfounded.

The last such incident that was addressed in the petition seeking to revoke the supervised release concerned an incident that occurred on January the eighth where Mr. Garcia called the police.

What happened is Mr. Garcia went to pick up the children and Miss Horvath who has some drug issues -- and she by the way is currently enrolled in an inpatient drug program -- she was under the influence at the time, so Mr. Garcia called the police.

They came, they took control of the situation and about three weeks later Mr. Garcia was arrested based on a probable cause affidavit where Miss Horvath had made some allegations.

Miss Horvath called the detective and told the detective she had made up everything she told them on the date in question, January the eighth.

She in fact came to court for his bond hearing. I also represented him over in State Court. And subsequently the case was dropped.

During that period of time the Department of Children and Family Services took the kids. Mr. Garcia loves his children and at that time they were threatening him with kidnapping because the children were placed with Mr. Manuel Garcia his brother. The children are in his care and custody.

He was under a lot of pressure and he relapsed. And that's where the dirty urines come from. He is currently in dependency proceedings. He's getting drug help as well as psychological counseling.

Miss Horvath is at an in-patient drug program. These are people that in my view are accepting responsibility as parents and trying to do the right thing for their kids.

Based on that myself and Mr. Morales, as well as Probation, feel this would be a reasonable and fair disposition with respect to his violation.

THE COURT: So you are basically asking for an additional six months?

MR. LEVIN: According to Mr. Salinas in order to effectuate that result Your Honor would have to revoke his supervised release today and impose an additional six months.

MR. SALINAS: Your Honor originally sentenced him to the maximum term of supervised release so we don't have the option of extending it. You can revoke it, give him credit time served for the time he served on the warrant and then go ahead and give him up to three years supervised release minus one day.

THE COURT: What good is an additional six months?

MR. LEVIN: Your Honor, it will give us the opportunity --

THE COURT: Let me interrupt you. Why should I give him six months as opposed to a year, year and a half?

MR. LEVIN: It will give us enough time to make sure he has

gone into the drug treatment aspect of the case and that he has successfully complied.

THE COURT: Is there some recommendation with regard to Miss Horvath? In my opinion they should stay away from each other.

MR. SALINAS: I would have instructed that, Your Honor. The problem is they have two children together.

THE COURT: Who has custody at present of the children?

MR. GARCIA: I have custody of the children. They are not together, Your Honor, he has his own apartment and she lives at the program.

MR. LEVIN: They're not together, Your Honor. They will share in the responsibility whenever they are deemed able to do so. They are not going to be together though because that's when the problems start.

THE COURT: For the record, sir, your name is?

MR. GARCIA: Manuel Garcia.

THE COURT: Mr. Garcia, are you prepared to continue taking care of the children?

MR. GARCIA: I have done this a long time --

THE COURT: I take that as a yes.

MR. GARCIA: Yes.

THE COURT: The concern I have with the suggestion is a good one but I don't see any downside with continuing to have some supervised release past six months, if for no other reason than to make sure we don't have this ongoing problem between Mr. Garcia and

Miss Horvath. My concern is with the children. This is not a good environment for them. It was heartening to see Mr. Manuel Garcia is willing to intercede and help everybody.

Seems to me everyone is better off including the defendant by having a little longer supervised release. What's the downside to extending it?

THE DEFENDANT: Your Honor, Miss Horvath is going to be at the Village Program up to a year. I need to get help on the outside so I can be there for the kids.

This was a one time thing. Everything just kind of piled up. I stopped going to my meetings. I just got overcome. I was very embarrassed.

I went right back to AA. I have a case worker. I will be in out patient programs, one on one counseling and therapy. I will have psychiatric evaluations.

THE COURT: That's all well and good. I am pleased to hear that. My question is why isn't it better instead of having it terminate in six months to have it extended for one year from the current period, and if Probation feels all the programs have been completed successfully you can then file a motion for early termination.

In the event things are not going as well as you hope at least we will have continued monitoring. I am inclined to do that. I don't see a downside to doing it that way.

MR. LEVIN: Ultimately you are the one that decides.

THE COURT: I think that's one thing we can all agree on. As I said, I don't see a downside to a longer period of monitoring and supervision. Given the history, and I have said this before in other cases, whenever I see the red flag of domestic violence I become very concerned. It's something I am very sensitive to.

I know there are games played sometimes in relationships. I understand that. However, this is something that I take very seriously. You are going to have an uphill battle convincing me it's not better for the children and that it's not better for the defendant.

Quite frankly, I think it is better for everyone. If it turns out all these programs are completed then Mr. Salinas, who is very on top of all of this, will let us know that Mr. Garcia is on his way to where he should be and he can file a motion to terminate the supervised release.

I suspect he has plenty of work and if Mr. Garcia is ready to be terminated he will file a motion to terminate at that time.

MR. LEVIN: Obviously, Your Hoor can do whatever you wish in that regard --

THE COURT: I think we already agreed I could.

MR. LEVIN: Yes, Your Honor. So then, with respect to his going through this program, this drug counseling and drug help, if he completes the program he will be assigned to do by the Family Court by way of a case planner, my understanding is the Court would consider a motion to terminate his supervision --

THE COURT: Absolutely. I though that's what I just said.

MR. LEVIN: But not before the 31st of December?

THE COURT: That's the earliest. Mr. Garcia can then contact you or contact Mr. Salinas and say, back in March the Judge said he would consider it.

We'll see what Miss Horvath's situation is at that time and what is going on with the children.

MR. LEVIN: Thank you, Your Honor.

THE COURT: I am willing to consider that sometime at the end of the year, as I said, if it's appropriate.

MR. LEVIN: Your Honor, for record keeping purposes, he's admitting to a violation of paragraph two, which is the substance abuse. He is not going to be admitting to domestic violence, as contained in paragraph one. My understanding is the Government would not proceed on that basis --

MR. MORALES: Yes, Your Honor. The Government decided to forego violation number one because we did learn the victim would testify on the defendant's behalf.

THE COURT: I don't know what happened here. I do know it's not uncommon for domestic violence to occur and then there's kind of a backing away from the allegations and then to have reconciliation, which in fact is getting back into the same situation.

MR. LEVIN: I am well aware of that. I assume it is still the Government's position they are not going to proceed with that charge --

MR. MORALES: That is correct, Your Honor.

THE COURT: All right. Based on the admission I find that the defendant Carlos Garcia is in fact in violation of paragraph two with regard to substance abuse, based on his positive drug test. I am going to accept the parties' recommendation as modified.

I'm going to revoke his current supervised release and place him on supervised release to run through July first, 2006 with the same terms and conditions currently in place.

As I have indicated, if things are progressing as Mr. Garcia seems to think, there are no problems with substance abuse or domestic violence, no problems in the relationship with Miss Horvath I will consider a recommendation to terminate the supervised release early.

Do either counsel or defendant have any objection to the Court's findings of fact or the manner in which it's announced its decision here today?

THE DEFENDANT: No, not at all. You were fair to me in sentencing.

THE COURT: All right. You still have the right to appeal, so let me tell you about your right to appeal. Pursuant to Rule 32(c)(5) of the Rules of Criminal Procedure, you have the right to appeal the sentence imposed.

Any notice of appeal must be filed within ten days of the entry of judgment being entered in this case. If you are unable to pay the cost of the appeal the Government will pay for that appeal.

Do you understand you have that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Good luck to you, Mr. Garcia.

Mr. Manuel Garcia, I want to thank you for your efforts in taking responsibility for the children. It's beyond the call of duty to undertake that responsibility. Obviously you and your wife have seen there's a need and you are willing to fill it. I am pleased to see that.

MR. GARCIA: Thank you, sir.

THE COURT: Your brother needs your support. Hopefully you will be there for him as well.

Mr. Garcia, it's now up to you. I hope to see at the end of the year a positive report. I will consider termination at that time. I will not terminate it if there's a potential problem out there. Good luck to you.

HEARING CONCLUDED

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

12-5-05

DATE FILED

PATRICIA SANDERS, RPR